49 P.3d 854 (2002)
146 Wash.2d 658
In re the Personal Restraint Petition of David L. KING, Petitioner.
No. 70595-0.
Supreme Court of Washington, En Banc.
Argued September 6, 2001.
Decided July 3, 2002.
*855 Sheryl McCloud, Seattle, David L. King, Walla Walla, for Petitioner/Appellant.
Christine McGregor, Attorney General, Donna Mullen, Asst. Attorney General, Olympia, for Appellee/Respondent.
JOHNSON, J.
This personal restraint petition (PRP) requires us to determine whether the Washington State Department of Corrections (Department) properly implemented the legislative mandates of former RCW 9.94A.150(1) (1996) (now codified at RCW 9.94A.728(1) (Laws of 2001, ch. 10, § 6)). Because we hold it has not, we must also determine whether any reasonable application of former RCW 9.94A.150(1) would give full effect to the statute. We hold there is such an interpretation and, further, the Department must structure its policies in accordance with this interpretation. Finally, we hold the 1995 amendment to former RCW 9.94A.150(1) (1992), a part of the codification of the "Hard Time for Armed Crime" initiative,[1] does not violate article II, section 37 of the Washington State Constitution.

FACTS
In 1997, a Snohomish County jury found David L. King guilty of first degree robbery (count I), first degree assault (count II), and unlawful possession of a firearm (count III). The jury also specifically found King employed a firearm in counts I and II.
On October 16, 1997, the court sentenced King to 190 months of imprisonment for count II concurrent with a 54-month sentence for count III (standard time). The court merged counts I and II for offender score purposes. The court also imposed a 60-month sentence enhancement (enhancement time) for count II because King employed a firearm in the assault. The court ordered the enhancement time to run consecutive to the other sentences.
The Department took custody of King on October 21, 1997. The Snohomish County Corrections Department certified "57 days of earned early release time to the Department of Corrections. This amount of time is based on conduct and performance while a prisoner held 287 days in custody. The total amount of pre and post convicted time and earned early release time credit is 344 days." Suppl. Resp. of Dep't of Corr. app. 3. The Department applied the 287 days of presentence detention time against King's enhancement time, which it calculated as having begun when King's presentence detention began.
In his PRP, King argues he "was entitled to one third of his good-time credit but did not recieve [sic] it from the county where he was initially sentenced,"[2] PRP at 31. The Court of Appeals asked the Department to respond to the contention King was improperly denied credit for the time he spent in jail. The Department answered that King could not receive any good time credits or earned early release time for the portion of his sentence that resulted from any deadly weapon enhancements. See former RCW 9.94A.150(1). The Department runs enhancement time before standard time because "[i]f the Department ran the [standard *856 time] first ..., an offender would have no incentive to behave appropriate [sic] during the [enhancement time]." Resp. of Dep't of Corr. at 7. According to the Department, when an offender who has served time in presentence detention receives an enhanced sentence, the Department applies the already served presentence detention time against the enhanced sentence time. This post hoc recharacterization effectively converts presentence detention time into enhanced time.
The Court of Appeals denied King's PRP, and he sought discretionary review. Supreme Court Commissioner Geoff Crooks queried whether the certified 57 days of earned yearly release time earned in presentence detention simply disappeared and directed the Department to respond. The Department replied that King lost the 57 days of early release time he earned in presentence detention because "[t]here is simply no statutory right to earned early release time during the mandatory portion of the sentence." Suppl. Br. of Dep't of Corr. at 3. King sought and this court granted discretionary review of this issue.

ANALYSIS
The Department created the conflict in this case by crediting King's presentence detention time against his enhancement time. Because the effect of this policy is to recharacterize presentence detention time as enhancement time, we hold the policy conflicts with the mandates of former RCW 9.94A.150(1) (1996):
No person serving a sentence imposed pursuant to this chapter and committed to the custody of the department shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:
(1) Except as otherwise provided for in subsection (2) of this section, the term of the sentence of an offender committed to a correctional facility operated by the department, may be reduced by earned early release time in accordance with procedures that shall be developed and promulgated by the correctional agency having jurisdiction in which the offender is confined. The earned early release time shall be for good behavior and good performance, as determined by the correctional agency having jurisdiction. The correctional agency shall not credit the offender with earned early release credits in advance of the offender actually earning the credits. Any program established pursuant to this section shall allow an offender to earn early release credits for presentence incarceration. If an offender is transferred from a county jail to the department of corrections, the county jail facility shall certify to the department the amount of time spent in custody at the facility and the amount of earned early release time. In the case of an offender who has been convicted of a felony committed after July 23, 1995, that involves any applicable deadly weapon enhancements ... shall not receive any good time credits or earned early release time for that portion of his or her sentence that results from any deadly weapon enhancements.

(Emphasis added.)
The Department argues the statute is clear, mandatory, and unambiguous. Under the Department's reading, "[i]nsofar as the statute addresses programs relating to presentence incarceration, its ... purpose is to ensure that persons otherwise entitled to earned or good time are not deprived of that benefit." Suppl. Resp. of Dep't of Corr. at 7. The problem with this argument is it ignores part of the language of the statute the Department claims is unambiguous. If the Department's interpretation and application of the statute were followed, a portion of the statute would be rendered meaningless, specifically the portion that states, "[a]ny program established pursuant to this section shall allow an offender to earn early release credits for presentence incarceration." Former RCW 9.94A.150(1); see State v. McGee, 122 Wash.2d 783, 787, 864 P.2d 912 (1993) (rejecting as unreasonable interpretation rendering statute's language superfluous). The Department cannot save its policy by qualifying an unambiguous mandate.
"Courts should assume the Legislature means exactly what it says." Berger v. Sonneland, 144 Wash.2d 91, 105, 26 P.3d 257 *857 (2001). Furthermore, we should construe statutes to avoid rendering any portion meaningless or superfluous. Stone v. Chelan County Sheriff's Dep't, 110 Wash.2d 806, 809, 756 P.2d 736 (1988). Having determined the Department's application of former RCW 9.94A.150(1) is unreasonable, we must now determine whether it is possible to give full effect to the statuteto simultaneously deny the capacity of certain offenders to earn early release credit, to give all offenders credit for presentence detention, and to allow all offenders "to earn early release credits for presentence incarceration." Former RCW 9.94A.150(1).
There are two applications of former RCW 9.94A.150(1) which give full effect to the statute. The first application would require the Department to run the enhancement time at the end of a prisoner's sentence. The Department argues, and King agrees, that this approach nullifies important penological tools. For example, if enhancement time runs at the end of an offender's sentence, the offender has no incentive to behave well during that time because an offender serving enhancement time "shall not receive any good time credits or earned early release time for that portion of his or her sentence that results from any deadly weapon enhancements." Former RCW 9.94A.150(1). This approach would force the Department to surrender an important incentive in the penal systema reward for good behavior. Furthermore, running a firearms enhancement at the end of an offender's sentence would preclude the Department from transferring such an offender to a work release or vocational education program at the end of the offender's sentence, a time when these programs might have the greatest effect. See former RCW 9.94A.310(3)(e) (1996) ("Notwithstanding any other provision of law, any and all firearm enhancements ... are mandatory, shall be served in total confinement, and shall not run concurrently with any other sentencing provisions."); former RCW 9.94A.030(35) (1996); ("`Total confinement' means confinement inside the physical boundaries of a facility or institution operated or utilized under contract by the state or any other unit of government for twenty-four hours a day, or pursuant to RCW 72.64.050 and 72.64.060."). Although applying the statute in this manner is linguistically defensible, this approach ignores too many important policies to be considered a reasonable or viable application. Cf. Allison v. Hous. Auth. of Seattle, 118 Wash.2d 79, 86, 821 P.2d 34 (1991) (refusing to abandon common sense when interpreting statute).
Under the second application, the enhancement time would run first, but instead of being applied against the enhancement time, the presentence detention time would be applied against the standard time. For example, in this case, King spent 287 days in the Snohomish County jail and earned 57 days of early release credit. To comply with the mandates of former RCW 9.94A.150(1), the Department should have, upon assuming custody of King,[3] begun the enhancement time "clock." That "clock" would start at zero and run for the length of King's mandatory sentence enhancement60 months in this case. King would not earn or accrue any good time credit or earned release time during this enhancement time. After 60 months, King's enhancement time would be complete and he would begin serving his standard time. The Department would then apply against the standard time the amount of time King spent in presentence detention, in addition to whatever early release credit he earned during that time. King would also be able to earn additional good time or early release credit while serving his standard range sentence. This approach avoids the conflicts created when an offender's presentence detention is recharacterized as enhancement time (thus dissolving whatever earned early release credit an offender might have accrued), and ensures the Department will maintain control over the important incentive of earned early release credit for good behavior.
*858 The Department must calculate prisoners' sentences in this manner in order to obey the Legislature's commands. This sensible approach gives full effect to the entire statute and recognizes the Legislature does not force prisoners to earn the same earned early release credit twice.
King argues former RCW 9.94A.150(1) is ambiguous and, under the rule of lenity, the ambiguity must be construed against the State. We disagree. "A statute is ambiguous if it can reasonably be interpreted in two or more ways...." Berger, 144 Wash.2d at 105, 26 P.3d 257. Former RCW 9.94A.150(1) cannot reasonably be interpreted in two or more ways. Although there are several ways to comply with the mandates of former RCW 9.94A.150(1), there is only one reasonable interpretation of the statute. That there are multiple ways to comply with a statute does not make the statute ambiguous.
King also argues the portion of former RCW 9.94A.150(1) that denies earned early release credit on mandatory sentence enhancements violates the Washington Constitution article II, section 37: "No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length." King correctly notes the 1995 amendment did not mention RCW 9.92.151,[4] RCW 70.48.210,[5] or RCW 72.09.130.[6] He argues the 1995 amendment impliedly amended or revised these statutes without setting them forth at full length and is, therefore, unconstitutional under article II, section 37.
RCW 9.92.151 and RCW 70.48.210 enable cities and counties to establish earned early release credit programs and farms, camps, work release programs, and special detention facilities. The statutes also allow cities and counties that establish such programs to link them to inmates' good behavior and performance. On the other hand, former RCW 9.94A.150 applies to persons serving a sentence imposed pursuant to chapter 9.94A RCW and committed to the custody of the Department. RCW 9.92.151 and 70.48.210 are directed at cities and counties; former RCW 9.94A.150 is directed at the Department. The 1995 amendment to former RCW 9.94A.150(1) has no effect on RCW 9.92.151 or RCW 70.48.210, whether explicitly or implicitly, because these statutes apply to entirely different government actors.
RCW 72.09.130, on the other hand, is directed at the Department. The statute identifies good time as a reward related to prison conduct. King argues the 1995 amendment makes some offenders' eligibility for earned early release time offense related instead of conduct related. He asserts that because the 1995 amendment did not set forth RCW 72.09.130 in full, the amendment is unconstitutional under article II, section 37. See Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 257, 11 P.3d 762, 27 P.3d 608 (2000) (striking down Initiative 695 "because it fail[ed] to set forth an existing law that is amended or revised by 695").
King fails to draw a vital distinction between the manner by which an eligible inmate may earn early release credit and whether an inmate is eligible to earn early release credit. RCW 72.09.130 defines the means by which eligible inmates may earn early release creditby good behavior and *859 participation in available education and work programs. "Earned early release days shall be recommended by the department as a reward for accomplishment." RCW 72.09.130(2). This statute simply defines the means by which eligible inmates may earn early release credit.
Conversely, former RCW 9.94A.150(1) defines which inmates are not eligible to earn early release credit. Inmates "convicted of a felony committed after July 23, 1995, that involves any applicable deadly weapon enhancements... shall not receive any good time credits or earned early release time for that portion of his or her sentence that results from any deadly weapon enhancements." Former RCW 9.94A.150(1). The 1995 amendment does not address the manner by which inmates may earn early release credit but rather addresses whether a particular inmate is eligible to earn early release credit. The 1995 amendment neither literally nor impliedly amended any statute other than former RCW 9.94A.150(1). King's constitutional argument fails.

CONCLUSION
King's PRP is granted to the extent he seeks reinstatement of the early release credit he earned in presentence detention. The Department is ordered to recalculate King's sentence in a manner consistent with this opinion and restructure its enhancement time and earned early release policies in a manner consistent with this opinion.
ALEXANDER, C.J., SMITH, SANDERS, CHAMBERS, OWENS, JJ., concur.
IRELAND, J. (dissenting in part).
I agree with the majority concerning the constitutionality of the 1995 amendment to former RCW 9.94A.150(1) (1992) a part of the codification of the "Hard Time for Armed Crime" initiative. However, concerning the authority of the Department of Corrections (Department) to credit all time served in county jail first to a mandatory firearm enhancement, I disagree with the majority's conclusion and therefore dissent as to that part of the opinion.
Former RCW 9.94A.310(3)(e) (1996) requires a deadly weapons enhancement to be served consecutively to any other sentence and served in total confinement. Former RCW 9.94A.150(1) provides that no good time credit is allowed for the enhanced portion of the sentence. I agree with the majority that the Department's policy to credit all time served in county jail first to a mandatory firearm enhancement is a "post hoc recharacterization [which] effectively converts presentence detention time into enhanced time." Majority at 856. However, the recharacterization is made for valid penological reasons, and does not deprive the inmate of early release credit; it just defers earning the early release time until the enhanced time is served. The purpose of the policy as acknowledged by the majority is to allow the defendant to be able to serve the end of the sentence in less than full confinement which could not occur if the defendant serves the enhanced time last. Id. at 857. The defendant receives the same credit for time served at the end of the sentence as would have been earned in county jail time.
The majority finds a conflict between the Department's policy and the mandates of former RCW 9.94A.150(1). Majority at 856. The majority finds a conflict by misinterpreting a portion of the language of the statute to mandate early release time for all county jail time regardless of whether any portion of the inmate's sentence is enhanced. The majority claims the following provision would be rendered meaningless under the department's policy: "`Any program established pursuant to this section shall allow an offender to earn early release credits for presentence incarceration.' " Id. (quoting RCW 9.94A.150(1) (1996)). The majority misapprehends the purpose of that provision. The purpose of the above quoted language is to ensure that various programs such as work or education release, inpatient substance abuse treatment, or other alternatives to full confinement will account for earned release time, assuming an offender is otherwise entitled to receive it. The policy of recharacterizing the time spent in full confinement in county jails as enhanced time does not offend this provision. In fact, if an inmate spends time in an alternative program which is other than full confinement, *860 the department cannot recharacterize the time spent in such a program as enhanced time as it does not qualify.
The majority proposes a solution to a nonexistent problem. The majority acknowledges that running the enhanced time at the end would preclude an inmate from being eligible for work release, vocational or educational programs at a time of maximum benefit to the inmate. Majority at 857. The majority's solution is to credit the earned release time in county jail and only begin to count the enhanced time from the time the inmate is transferred to the Department. This solution would be detrimental to an inmate who has only enhanced time remaining to be served and who would benefit from having county time counted against the enhancement. This could occur where the amount of time spent presentence is very high due to delays in trial or sentencing or where there is a remand for retrial after an appeal. Where an exceptional sentence downward has reduced or eliminated the sentence except for enhanced portion, this policy could eliminate the benefit of the exceptional sentence where county jail time was served. See State v. Brown, 139 Wash.2d 20, 983 P.2d 608 (1999) (holding that the court may not impose exceptional sentence downward below the time specified for a mandatory deadly weapon enhancement).
The majority has created a nonexistent conflict between the unambiguous statute and the Department's policy. The result will be to increase some inmates' time served in total confinement in certain instances, not to reduce it. David King will be entitled to the same credit for time served under his sentence whether the county time counts as enhanced time or not. The Department's policy is defensible and does not offend the statute. This court should not attempt to micromanage executive branch policy where there is no justification to do so.
BRIDGE and MADSEN, JJ., concur.
NOTES
[1] Laws of 1995, ch. 129, § 7 (Initiative 159).
[2] King later conceded he was entitled to no more than a 15 percent sentence reduction.
[3] The Department is free to calculate the start date of an offender's hard time as it chooses. Regardless of when it begins calculating hard time, however, it must ensure all offenders receive credit for their presentence detention and for the earned early release credits earned thereon.
[4] In 1995, as now, RCW 9.92.151 allowed correctional agencies having jurisdiction to establish earned early release programs based on inmates' good behavior and performance.
[5] In 1995, as now, RCW 70.48.210 allowed cities and counties to establish farms, camps, work release programs, and special detention facilities, and permitted cities and counties to establish earned early release programs based on inmates' good behavior and performance as determined by the work release facility.
[6] In 1995, as now, RCW 72.09.130 required the Department to adopt a system to provide incentives for good conduct. The Legislature amended RCW 72.09.130 in 1995 to explicitly identify the incentives as earned early release days and other privileges and clearly link these incentives to inmates' behavior and participation in education and work programs. The Legislature also deleted from the statute its own former definitions of "good performance" and "good conduct," and specifically denied inmates' eligibility for earned early release days during any time inmates refuse to participate in education or work programs in which they are validly placed.