[No. 21923-2-III. Division Three. July 8, 2004.]

COBRA ROOFING SERVICE, INC., *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

404

*Kevin W. Roberts* (of *Dunn & Black, P.S.*), for appellant.

*Christine O. Gregoire, Attorney General,* and *Anastasia R. Sandstrom, Assistant,* for respondent.

*Douglas B.M. Ehlke* on behalf of Building Industry Association of Washington, amicus curiae.

BROWN, J. — Cobra Roofing Services (Cobra) and the Department of Labor and Industries (Department) both prevailed on specific issues in a judicial review of alleged violations of the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW. Neither the Board of Industrial Insurance Appeals (Board) nor the superior court would grant Cobra's request for attorney fees and costs under the equal access to justice act (EAJA), RCW 4.84.350 (LAWS OF 1995, ch. 403, § 901). Cobra appeals the denial of fees and costs as well as other issues. The Department cross appeals the superior court's determination that one of the WISHA violations was not a repeat offense. We hold one of the violations is properly viewed as a repeat offense and reverse the superior court's contrary holding, but otherwise affirm the superior court and Board.

## FACTS

On February 22, 2000, a Department inspector issued citations to Cobra for safety violations at a school remodeling site. Citation 1, Item 1 (fall protection citation), stated: "The employer did not ensure employees exposed to a hazard of falling from a location 10 feet or more in height,

were using a fall restraint, fall arrest system." Board Record (BR) at 73. The inspector assessed a base penalty of $1,600 and then doubled it to $3,200 because the citation was for a repeat violation. Citation 2, Item 1 (ladder citation), which assessed a $640 penalty, stated: "The employer did not ensure when portable ladders are used for access to an upper landing surface, the ladder side rails shall extend at least 3 feet above the upper landing surface to which the ladder is used to gain access." BR at 74. Citation 2, Item 2 (materials storage citation), which assessed a $1,360 penalty, stated: "The employer did not ensure materials that were stored within six feet of the roof edge had guardrails erected at the roof edge." BR at 74. Citation 3, Item 1 (general citation) carried no monetary penalty. A hearing examiner issued a corrective notice of redetermination affirming the citations, including the repeat violation penalty on the fall protection violation.

Cobra appealed to the Board. The industrial insurance appeals judge (IAJ) issued a proposed decision and order affirming the fall protection citation with an $800 penalty, but determined also that it was not a repeat violation. The IAJ further affirmed the general citation with no monetary penalty. The IAJ reversed the ladder citation and the materials storage citation.

Relying on RCW 4.84.350(1), the EAJA, Cobra moved for attorney fees and costs incurred in defending against the citations. The Department filed a petition for review to the Board.

The Board issued a decision and order setting forth findings of fact and conclusions of law. As a preliminary matter, the Board rejected Cobra's fee request, reasoning RCW 4.84.350(1) does not authorize such an award for prevailing before the Board. The Board affirmed the fall protection citation, held it was a repeat violation, and assessed a $1,600 penalty. The Board also affirmed the ladder citation and assessed a $640 penalty. The Board vacated the materials storage citation. And the Board affirmed the general citation without a financial penalty.

Cobra filed a notice of appeal to the Asotin County Superior Court. Cobra also moved for an award of attorney fees and costs. The superior court concluded that the Department erred in characterizing the fall protection citation as a repeat violation. The superior court affirmed the Board as to the ladder citation. The superior court further decided Cobra was not entitled to attorney fees and costs for work before the Board under RCW 4.84.350. However, the superior court partly granted Cobra's request for attorney fees and costs incurred in that court, reasoning Cobra had prevailed on the repeat violation issue for purposes of the EAJA.

The superior court granted the Department's motion for reconsideration on the attorney fee issue, concluding that both sides prevailed on significant issues and therefore Cobra was not entitled to fees. Consequently, the superior court denied Cobra's fee request. Cobra appealed. The Department cross-appealed.

## ANALYSIS

### A. Ladder Citation

The issue is whether the Board erred in deciding Cobra's placement of ladders violated WAC 296-155-480(2)(a), which states:

> When portable ladders are used for access to an upper landing surface, the ladder side rails shall extend at least 3 feet (.9 m) above the upper landing surface to which the ladder is used to gain access; or, when such an extension is not possible because of the ladder's length, then the ladder shall be secured at its top to a rigid support that will not deflect, and a grasping device, such as a grabrail, shall be provided to assist employees in mounting and dismounting the ladder. In no case shall the extension be such that ladder deflection under a load would, by itself, cause the ladder to slip off its support.

"Landing means any area such as the ground, roof, or platform that provides access/egress for a ladder." WAC 296-155-47501(11).

Here, the ladder leaned up against a parapet wall surrounding the roof. The parapet wall varied between 23 to 30 inches in height. The ladder did not extend three feet above the top of the parapet wall. And it is not clear whether the top of the ladder extended at least three feet above the roof; the inspector did not measure it, and declined to estimate it. Cobra, claiming the top of the ladder was at least three feet above the roof, contends "upper landing surface" means the roof, and, therefore, there was no violation. The Department argues "upper landing surface" means the top of the parapet wall, and, therefore, the ladder was not in compliance.

We interpret agency regulations as if they were statutes. *Children's Hosp. v. Dep't of Health*, 95 Wn. App. 858, 864, 975 P.2d 567 (1999). We review the Board's interpretation of the statute or regulation de novo. *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 295, 916 P.2d 399 (1996). We review the agency's interpretation under an error of law standard, which allows an appellate court to substitute its own interpretation of the statute or regulation for the Board's interpretation. *St. Francis Extended Health Care v. Dep't of Soc. & Health Servs.*, 115 Wn.2d 690, 695, 801 P.2d 212 (1990). We give substantial weight to the agency's interpretation of statutes and regulations within its area of expertise. *Id.* Accordingly, we will uphold an agency's interpretation of a regulation if "it reflects a plausible construction of the language of the statute and is not contrary to the legislative intent." *Seatoma Convalescent Ctr. v. Dep't of Soc. & Health Servs.*, 82 Wn. App. 495, 518, 919 P.2d 602 (1996). But we must also ensure that the agency applies and interprets its regulations consistently with the enabling statute. *Ortega v. Employment Sec. Dep't*, 90 Wn. App. 617, 622, 953 P.2d 827 (1998).

No controlling case law defines the meaning of WAC 296-155-480(2)(a). Standing alone, "landing" is a noun that means "any area," including a "platform that provides access/egress for a ladder." WAC 296-155-47501(11). "Upper landing" is an adjectival phrase modifying "surface." *See*

*Yates Constr. Co. v. Comm'r of Labor*, 126 N.C. App. 147, 484 S.E.2d 430, 433 (1997) (interpreting "upper landing surface" for purposes of Occupational Safety & Health Administration (OSHA) ladder standard). Cobra notes correctly the definition of landing includes "roof," but it also includes "any area," which would include a wall surrounding a roof. WAC 296-155-47501(11).

In essence, "upper landing surface" describes the point at which the worker accesses the top end of the ladder. WAC 296-155-480(2)(a); *see Yates Constr.*, 484 S.E.2d at 433 (holding "upper landing surface" was the ground at the top of a trench). The top surface of the parapet wall meets that definition. Although narrow, the wall is an "area" or "platform" on which the upper end of the ladder rests for purposes of access to the ladder. WAC 296-155-47501(11). The top of the wall is also the area where a worker would mount or dismount the ladder in order to enter or leave the work area, the roof. Accordingly, in this case the ladder must extend three feet above the top of the wall as measured from the point where the ladder rests upon the wall. WAC 296-155-480(2)(a).

Here, the ladder did not reach the required height above the wall. *See Yates Constr.*, 484 S.E.2d at 433 (reasoning that a safety violation occurs where a ladder does not extend the required height above the top of a trench). Cobra's interpretation is untenable because it would allow the ladder to end flush with or below the top of the parapet wall if the wall rises three or more feet above the roof. *See id.* at 434 (noting with disapproval that workers would have to climb the trench wall above the ladder). Cobra's proposition is also inconsistent with a current interpretation of the nearly identical OSHA ladder standard:

> The [OSHA] ladder standard requires that the side rails of a ladder extend beyond the top of any low wall or railing that protects the edge of a platform, roof, or bridge of a building. It is not sufficient if the ladder ends flush with the uppermost surface of the low wall, railing, etc.

15 EMPL. COORDINATOR (RIA) WORKPLACE SAFETY § 2:47 (Mar. 2004).

Treating the top of the parapet wall as an "upper landing surface" for purposes of WAC 296-155-480(2)(a) serves the broad remedial purpose of the enabling statute, which is "to assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of Washington." RCW 49.17.010. We interpret WISHA provisions liberally to carry out the statute's remedial purpose. *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 146, 750 P.2d 1257, 756 P.2d 142 (1988); *Inland Foundry Co. v. Dep't of Labor & Indus.*, 106 Wn. App. 333, 24 P.3d 424 (2001). Here, the Board did not err in finding a violation of WAC 296-155-480(2)(a).

## B. Repeat Violation

The issue is whether the Board erred in finding Cobra had committed a repeat violation of WAC 296-155-24510, a fall protection regulation. A repeat violation results in a harsher penalty. RCW 49.17.180(1). Cobra does not contest the base violation, but contends it was not a repeat of a previous violation.

■ We apply the substantial evidence standard when reviewing challenged Board findings. *Miller v. City of Tacoma*, 138 Wn.2d 318, 323, 979 P.2d 429 (1999); *Wash. Cedar & Supply v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 914, 83 P.3d 1012 (2004). Evidence is substantial if it is of sufficient quantum to persuade a fair-minded person of the truth of the asserted fact. *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 712, 732 P.2d 974 (1987); *Wash. Cedar & Supply*, 119 Wn. App. at 911. Moreover, because we defer to the agency's factual findings in its area of expertise, we will not reverse the findings unless they are clearly erroneous. *Ass'n of Rural Residents v. Kitsap County*, 141 Wn.2d 185, 195-96, 4 P.3d 115 (2000); *Wash. Cedar & Supply*, 119 Wn. App. at 914.

■ The regulation in effect at the relevant time stated: " 'Repeat violation' includes any violation of a standard or order when a violation has previously been cited to the

same employer when it identifies the same type of hazard." Former WAC 296-27-16001(9) (repealed effective August 1, 2000, St. Reg. 00-11-098).[1] The Department "has the authority to issue a citation for a repeat violation if it has issued any final safety violations of the same type within three years of the current citation." *Wash. Cedar & Supply*, 119 Wn. App. at 918 (citing former WAC 296-27-16007(5) (repealed effective August 1, 2000, St. Reg. 00-11-098)). Thus, the critical focus is whether Cobra was cited previously for "the same type of hazard." Former WAC 296-27-16001(9).

The fall protection regulation at issue here partly states:

> When employees are exposed to a hazard of falling from a location 10 feet or more in height, the employer shall ensure that fall restraint, fall arrest systems or positioning device systems are provided, installed, and implemented according to the following requirements.

WAC 296-155-24510.

Regarding the "following requirements," the regulation governs in great detail three types of safety systems: "fall restraint protection," such as guardrails, safety belts and harnesses, warning lines, and safety monitors, WAC 296-155-24510(1); "fall arrest protection," such as body harnesses, safety nets, and catch platforms, WAC 296-155-24510(2); and "positioning device systems" such as "a body belt or body harness system rigged to allow an employee to be supported on an elevated vertical surface, such as a wall, and work with both hands free while leaning," WAC 296-155-24503, -24510(3).

Cobra contends a "repeat violation" requires a finding that the previous violation involved the same specific equipment or practice shortcoming, such as failure to use an approved type of safety harness. The Department argues that the nature of the hazard controls, such as the danger of

---

[1] The current regulation partly states: "A violation is a repeat violation if the employer has been cited one or more times previously for a substantially similar hazard." WAC 296-800-35040.

falling from a high place. In other words, Cobra focuses on the act or failure to act underlying the hazard, while the Department focuses on the resulting hazard.

If there is a lack of state law on point, it is appropriate to look to OSHA and related federal decisions. *Adkins*, 110 Wn.2d at 147; *Wash. Cedar & Supply*, 119 Wn. App. at 911-12. Here, the superior court followed a Maryland case interpreting OSHA and the Maryland statute derived from it. *Comm'r of Labor & Indus. v. Bethlehem Steel Corp.*, 344 Md. 17, 684 A.2d 845 (1979). The Maryland court held the agency must prove a "substantial similarity between the conditions giving rise to the hazard in order to sustain a repeated violation" under the applicable act. *Bethlehem Steel*, 684 A.2d at 854. "Clearly, when a rule or regulation mandates or proscribes very specific conduct, the burden is slight. A repeated violation under a very specific standard requires the present and antecedent conditions to be almost identical." *Id.* Under *Bethlehem Steel*, it is the conduct or conditions underlying the hazard, not the type of hazard itself that controls. *Id.*

The Maryland case is distinguishable and lacking in persuasive weight for two important reasons. First, it seems no other jurisdiction has adopted its restrictive repeat violation standard. In contrast, it appears most federal jurisdictions dealing with the issue apply a broader "substantial similarity" standard more consistent with the Washington regulation in determining the occurrence of repeat OSHA violations. *See, e.g., Manganas Painting Co. v. Sec'y of Labor*, 273 F.3d 1131, 1135 (D.C. Cir. 2001); *Dun-Par Engineered Form Co. v. Marshall*, 676 F.2d 1333, 1337 (10th Cir. 1982); *George Hyman Constr. Co. v. Occupational Safety & Health Review Comm'n*, 582 F.2d 834, 842 (4th Cir. 1978).

Second, and most importantly for this appeal, WISHA contains a definition of repeat violation whereas OSHA and its Maryland counterpart do not. *Compare* former WAC 296-27-16001(9) *with Bethlehem Steel*, 684 A.2d at 851. Significantly, the WISHA regulation requires the repeat

violation to be based on "the same type of hazard." Former WAC 296-27-16001(9). That regulation derives from an enabling statute that broadly authorizes significant monetary penalties against employers who "willfully or repeatedly" violate "any safety or health standard promulgated under the authority of this chapter." RCW 49.17.180(1).

Here, the hazard was falling from a height of 10 or more feet. WAC 296-155-24510. Numerous subsections of the regulation govern how the employer will minimize or eliminate the hazard. *Id.* But the hazard is the same regardless of the means of dealing with it. *Id.* Under Cobra's theory, it could hypothetically violate a specific "fall restraint" standard, WAC 296-155-24510(1), and then later violate a specific "fall arrest" standard, WAC 296-155-24510(2), without running the risk of an enhanced penalty for a repeat fall protection violation under WAC 296-155-24510 generally.[2]

But Cobra's interpretation does not alter the stark fact that it twice exposed its employees to the hazard of falling from a height of 10 or more feet. WAC 296-155-24510. In the second incident, the record shows a complete lack of fall protection equipment and procedures being utilized at the time of the inspection. *Id.* To contend that the sweeping failure underlying the latest citation is not substantially similar to what may have been a more specific fall protection violation underlying the earlier citation is to ignore the broad remedial purpose of WISHA. RCW 49.17.010, .180(1). Consequently, Cobra's interpretation is unpersuasive.

Furthermore, a very recent Washington case addressing the repeat violation issue supports the Department's broad interpretation of "repeat violation." *Wash. Cedar & Supply*, 119 Wn. App. at 918. Division Two of this court noted that

---

[2] Amicus Building Industry Association of Washington contends the second citation was not a repeat because Cobra should have been cited for a violation of WAC 296-155-24515, a standard applicable to low-pitched roofs. But Cobra did not dispute the application of WAC 296-155-24510 below. And the potential applicability of WAC 296-155-24515 was never raised below. "Appellate courts will not usually decide an issue raised only by amicus, and we decline to do so here." *Noble Manor v. Pierce County*, 133 Wn.2d 269, 272 n.1, 943 P.2d 1378 (1997) (citing *Coburn v. Seda*, 101 Wn.2d 270, 279, 677 P.2d 173 (1984)). Likewise, we ordinarily do not address assignments of error raised for the first time on appeal. RAP 2.5(a).

the Department characterized two previous violations and the current violation as fall protection violations. *Id.* Division Two was satisfied with the general characterization of the multiple violations, concluding: "Given the evidence that Washington Cedar committed prior, similar violations and considering the deference we accord the Board's findings, we cannot say that the Board's finding of a repeat violation was clearly erroneous." *Id.*

*Washington Cedar & Supply* sets forth a low threshold; "similar violations" will suffice. *Id.* Here, the inspector testified at the administrative hearing that she observed Cobra's employees working near the roof edge without wearing fall arrest apparatus, such as a harness or safety rope. She issued to Cobra, "[a] citation for a lack of fall protection, 24510." Board Tr. (BT) at 79. "That's a violation of not following fall protection requirements." BT at 80. "The code requires that above ten feet that an employee either is behind a type of guardrail system, that they're in some type of fall restraint, fall arrest or in certain cases a safety monitor system." BT at 80.

The inspector testified that in calculating the penalty she considered various factors including "any past violations in the last three years." BT at 88. According to the inspector, Cobra's history included "four general and fifteen serious violations, two of the violations were for no fall protection." BT at 88. The inspector noted that Cobra "had a prior inspection that was a repeat on a fall protection." BT at 91. "It was on the fall protection, 24510." BT at 92. Accordingly, the inspector doubled the penalty pursuant to regulation.

On cross-examination, the inspector could not recall the precise nature of the previous fall protection citation, but said she read through the citation while doing her evaluation. In any event, a Cobra representative admitted that the company had been previously cited for fall protection. With regard to similarities between the past and current violations, the Cobra representative testified, "I believe it was the same code." BT at 183.

The foregoing record is substantial evidence Cobra committed a previous violation sufficiently similar to the current violation to render the latter a repeat. *See Wash. Cedar & Supply*, 119 Wn. App. at 918. Accordingly, the superior court erred in reversing the Board's finding of a repeat violation.

C. Attorney Fees for Work Before the Board

The issue is whether RCW 4.84.350(1) of the EAJA authorizes the Board to award attorney fees and costs to a prevailing party in a WISHA case.

This issue turns on the correct meaning of RCW 4.84.350(1), which states:

> Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.

While conceding Cobra is a "qualified party," the Department contends "judicial review" is limited solely to review in a superior court. RCW 4.84.350(1). Cobra argues "judicial review" encompasses administrative appeals before the Board. RCW 4.84.350(1).

■ Interpretation of a statute is a question of law subject to de novo review. *Berger v. Sonneland*, 144 Wn.2d 91, 104-05, 26 P.3d 257 (2001). We interpret the statute "to best advance the legislative purpose." *State v. C.J.*, 148 Wn.2d 672, 685, 63 P.3d 765 (2003) (citing *Morris v. Blaker*, 118 Wn.2d 133, 143, 821 P.2d 482 (1992)).

We begin our analysis with a plain meaning interpretation of the relevant statutory language in light of the underlying legislative purpose. *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003);

*Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). Similarly, we interpret the statute in its entirety, reviewing all provisions of the statute in relation to each other. *In re Det. of Williams*, 147 Wn.2d 476, 490, 55 P.3d 597 (2002).

If the statute is unambiguous, we will not subject it to judicial construction. *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239, 59 P.3d 655 (2002), *cert. denied*, 538 U.S. 1057 (2003). We will not add language to an unambiguous statute even if we believe the legislature intended something else but failed to adequately express its alternative intent. *Kilian v. Atkinson*, 147 Wn.2d 16, 20, 50 P.3d 638 (2002). If the statutory language is unambiguous, we assume the legislature meant exactly what it said when it enacted the statute. *In re Pers. Restraint of King*, 146 Wn.2d 658, 663, 49 P.3d 854 (2002).

"RCW 4.84.350 provides that a court shall award attorney fees to the party that prevails in a judicial review of an agency action." *Constr. Indus. Training Council v. Wash. State Apprenticeship & Training Council of Dep't of Labor & Indus.*, 96 Wn. App. 59, 67, 977 P.2d 655 (1999). For purposes of the EAJA, " '[a]gency action' means agency action as defined by chapter 34.05 RCW." RCW 4.84.340(2). " 'Judicial review' means a judicial review as defined by chapter 34.05 RCW." RCW 4.84.340(4). Chapter 34.05 RCW is commonly known as the Administrative Procedure Act (APA). *See, e.g., Plum Creek Timber Co. v. State Forest Practices Appeals Bd.*, 99 Wn. App. 579, 588, 993 P.2d 287 (2000).

The Department notes correctly that the APA does not apply to Board proceedings. RCW 34.05.030(2)(a), (c). WISHA separately provides for appeals to the Board and superior court review of Board WISHA decisions. RCW 49.17.140, .150. Nevertheless, the plain text of the EAJA does not indicate a legislative intent that it apply solely to agency actions subject to APA review. Rather, in light of the broad language of the EAJA, the obvious purpose of the

cross-references to the APA was to give definitional guidance on terms of art such as "judicial review."

 Under the APA, "[a]gency action" means an agency's "implementation or enforcement of a statute, the adoption or application of an agency rule or order, the imposition of sanctions, or the granting or withholding of benefits." RCW 34.05.010(3). The APA does not define "judicial review," but Part V of the statute governs judicial review. RCW 34.05.510-.598. A person reading the judicial review section of the APA would necessarily conclude "judicial review" means review by a superior court, the court of appeals, or the Supreme Court.

By contrast, "an agency" generally conducts "an adjudicative proceeding." RCW 34.05.413. The Board of Industrial Insurance Appeals is an adjudicative agency created to hear appeals from Department orders, decisions, or awards. RCW 51.52.010, .050. A party aggrieved by a Board decision may then appeal to the superior court. RCW 51.52.050, .110.

Dictionaries further support the Board's conclusion that its proceeding was not a "judicial review." A general use dictionary broadly defines "judicial review" as "a constitutional doctrine that gives to a court system and esp. to a supreme court the power to annul legislative or executive acts which the judges declare are contrary to the provisions of the constitution." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1223 (1993). A legal dictionary defines "judicial review" more specifically as a "[f]orm of appeal from an administrative body to the courts for review of either the findings of fact, or of law, or of both." BLACK'S LAW DICTIONARY 762 (5th ed. 1979). Both definitions are consistent with the concept of a court of law conducting judicial oversight of government action. In the words of a legal scholar, "Judicial review is based on the fundamental premise that courts are the final arbiters of governmental determinations affecting the legal rights, duties, or privileges of specifically named persons." Charles E. Daye, *Powers of Administrative Law*

*Judge, Agencies, and Courts: An Analytical and Empirical Assessment*, 79 N.C. L. Rev. 1571, 1588 (2001).

Given all, the Board did not err in declining to award fees under the EAJA.

## D. Attorney Fees for Judicial Review

The issue is whether the EAJA applies to WISHA cases. The superior court concluded that it did. The Department contends it does not.

 As discussed, the APA does not apply to Board proceedings. And the EAJA cross-references definitions contained in the APA. But nothing in the plain language of the EAJA precludes its application to agency actions falling outside the procedural boundaries of the APA. RCW 4.84.350. As noted, the APA references provide definitional guidance. The legislature meant what it said; the operative language of the EAJA encompasses a broad range of agency action. *See Constr. Indus. Training Council*, 96 Wn. App. at 68-69 (applying EAJA to Department subagency); *but see also Duwamish Valley Neighborhood Pers. Coalition v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 97 Wn. App. 98, 100-01, 982 P.2d 668 (1999) (holding EAJA did not apply *against* a purely adjudicative agency). Accordingly, the trial court was correct to reason the EAJA generally applied to Cobra's judicial appeal.

## E. Reconsideration Decisions

The broad dispute is whether the superior court erred in concluding in reconsideration that Cobra Roofing did not prevail sufficiently to justify an award of attorney fees and costs under the EAJA. The superior court initially granted Cobra EAJA fees for prevailing on the "repeat violation" issue. Clerk's Papers at 144. On reconsideration, the superior court reversed itself, reasoning that an EAJA award was not appropriate because the Department also prevailed on certain issues. Thus, the first issue is whether the trial

court erred in denying an award of fees and costs on the basis that the comparative success of both Cobra and the Department cancelled each other out. If so, the second issue is whether we may affirm the superior court on the alternative ground that the Department's actions were substantially justified. RCW 4.84.350(1).

The standard of review for a trial court's decision whether to award fees and costs under the EAJA is abuse of discretion. *Constr. Indus. Training Council*, 96 Wn. App. at 66. "An abuse of discretion is present only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons." *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995) (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *Coggle v. Snow*, 56 Wn. App. 499, 506-07, 784 P.2d 554 (1990)).

"A prevailing party is entitled to an EAJA award unless an agency can convince the trial court that its actions were substantially justified or that circumstances would make that award unjust." *Constr. Indus. Training Council*, 96 Wn. App. at 68 (citing RCW 4.84.350). "The term 'substantial justification' requires the State to show that its position has a reasonable basis in law and fact." *Id.* (citing *Aponte v. Dep't of Soc. & Health Servs.*, 92 Wn. App. 604, 623, 965 P.2d 626 (1998)). Stated another way, "[a]n action is substantially justified if it is 'justified to a degree that could satisfy a reasonable person.'" *Schrom v. Bd. for Volunteer Firefighters*, 117 Wn. App. 542, 551, 72 P.3d 239 (2003) (quoting *Alpine Lakes Prot. Soc'y v. Dep't of Natural Res.*, 102 Wn. App. 1, 19, 979 P.2d 929 (1999)).

"A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought." RCW 4.84.350(1). The Department concedes that Cobra is a qualified party. The Department also concedes Cobra "obtained relief on a significant issue that achieves some benefit" that it sought, specifically the Board's "repeat" violation determination, which the superior court reversed.

*Id*. Even so, the Department argues to affirm the superior court on the alternative grounds that the Department's actions were "substantially justified." *Id*.

The Department's concession on the existence of a "significant issue" is justified. *Id*. The finding of a repeat violation was not a trivial matter. It resulted in a doubling of the base penalty. The reversal by the trial court on that "significant issue" afforded Cobra "some benefit" it "sought" in the form of a drastically reduced penalty. *Id*. Accordingly, Cobra prevailed before the superior court for purposes of the EAJA.

Moreover, the plain language of the EAJA does not authorize the superior court to deny an award because the Department also prevailed on certain issues. *Id*. While the EAJA authorizes the trial court to deny an award where it would be "unjust," the superior court here did not characterize the award in that manner. RCW 4.84.350(1). Accordingly, the trial court erred in denying an award on the stated basis.

Nevertheless, the Department correctly notes we can affirm the superior court on any ground established by the pleadings and the evidence. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989). The Department has consistently argued an EAJA award is improper because its actions were "substantially justified." RCW 4.84.350(1). Now, in light of our decisions to sustain the ladder violation and resurrect the repeat violation penalty, the Department can additionally argue Cobra has failed to prevail on the merits of both contested issues.

In sum, the superior court erred in denying the EAJA award on the stated grounds, but we affirm on the alternative basis that the Department prevailed. Necessarily, we decline to award Cobra attorney fees because it did not prevail.

## CONCLUSION

We reverse the superior court's ruling vacating the repeat violation penalty, and affirm the superior court and Board in all other respects.

SCHULTHEIS and KURTZ, JJ., concur.

Reconsideration denied August 19, 2004.

Review granted at 154 Wn.2d 1001 (2005).