[No. 35495-1-II.   Division Two.   November 14, 2007.]

J&S Services, Inc., *Appellant*, v. The Department of Labor and Industries, *Respondent*.

504

*Aaron K. Owada* (of *AMS Law*), for appellant.

*Robert M. McKenna, Attorney General*, and *Nancy A. Kellogg, Assistant*, for respondent.

¶1 HOUGHTON, C.J. — J&S Services, Inc., appeals a trial court order affirming a Board of Industrial Insurance Appeals (BIIA) decision and order. The BIIA order affirmed the issuance of two citations against J&S by the Washington State Department of Labor and Industries (L&I) for Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, violations related to fall protections and fall protection work plans. J&S argues that the BIIA and the trial court erred in affirming the fall protection citation because J&S used a permissible alternative method. We affirm.

FACTS

¶2 Steel contractor J&S was constructing a 90- by 120-foot commercial building in Vancouver on November 7, 2003, when L&I inspector Kent Davis observed workers exposed to a fall hazard of 10 feet or more without adequate fall protection. On that day, J&S workers were installing the building's roof deck, on which they would later build the

roof.[1] J&S had nearly completed construction of the roof deck at the time of the site visit.[2]

¶3 J&S employed two fall protection methods: a safety monitor and spray-painted lines to alert workers as they approached the roof deck edge. Workers had spray-painted lines on the 35-foot work area.

¶4 Davis performed his inspection from the ground, but he did not dispute that J&S had spray-painted lines on the roof deck. Through an unfinished hole in the roof deck, he observed that J&S employee Keith Delaney was exposed to what he estimated to be a 20-foot fall. He testified that, based on the work site conditions, he expected that J&S would have implemented a fall arrest, fall restraint, or safety warning line system.

¶5 L&I issued J&S two citations for violations of WAC 296-155-24510 and -24505(2)(a). The WAC 296-155-24510 citation set forth that, although J&S was using a monitoring system for fall protection, "no warning line system had been erected as required by this system to protect employees from falling up to 20 feet from the unprotected sides and edges of the roof."[3] Administrative Record (AR) at 58.

¶6 J&S appealed the citations. L&I issued a corrective notice of redetermination affirming the citations and finding in part that a spray-painted line did not meet warning line system requirements. J&S appealed the notice to the BIIA, which affirmed the redetermination and also denied J&S's petition for review. The superior court affirmed the BIIA decision, and J&S appeals.

---

[1] The workers on the roof included Richard Sciumbato, Jr., the foreman; Daniel Beyle, the safety monitor; and Keith Delaney.

[2] Davis testified that Sciumbato, Jr., told him that J&S had the materials necessary to erect a warning line system. Sciumbato, Jr., testified that, although warning line materials were usually on site, J&S did not erect the warning line system until the roof decking was almost complete.

[3] The record shows that the activity prompting this citation was Delaney's leading edge work.

## ANALYSIS

### WAC 296-155-24520

¶7 J&S contends that the applicable fall protection standard is WAC 296-155-24520 for leading edge work and that, because WAC 296-155-24520(1)(c) provides an exception for an "equivalent" method of fall protection, J&S complied with the regulation by spray-painting fluorescent lines six feet from the edge of the work surface.[4]

¶8 We review agency regulations de novo as if they were statutes. *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 137 Wn. App. 592, 598, 154 P.3d 287 (2007). When interpreting a WISHA regulation, we read it in light of WISHA legislation as a whole and avoid conflicts between different provisions. *Wash. Cedar*, 137 Wn. App. at 600.

¶9 We also construe WISHA regulations liberally to achieve their purpose of providing safe working conditions for every Washington worker. *Inland Foundry Co. v. Dep't of Labor & Indus.*, 106 Wn. App. 333, 336, 24 P.3d 424 (2001). We accord substantial weight to an agency's interpretation within its area of expertise and uphold that interpretation if it reflects a plausible construction of the regulation and is not contrary to legislative intent. *Roller v. Dep't of Labor & Indus.*, 128 Wn. App. 922, 926-27, 117 P.3d 385 (2005). But we retain ultimate responsibility for interpreting a regulation. *Children's Hosp. & Med. Ctr. v. Dep't of Health*, 95 Wn. App. 858, 864, 975 P.2d 567 (1999).

¶10 WAC 296-155-24520(1)(a) and (b) provide that, where leading edge work is being performed, a warning line system must be erected, establishing a control zone at least six feet back from the leading edge to prevent falls.

---

[4] The facts are undisputed, and J&S does not expressly assign error to any BIIA conclusions of law. But it impliedly challenges the BIIA's conclusion of law 2 that the exception under WAC 296-155-24515(2)(b) does not apply because J&S was not engaged in roofing and the building's roof was more than 50 feet wide and conclusion of law 3 that it violated WAC 296-155-24510.

WAC 296-155-24520(1)(c) dictates that the warning line system "shall consist of wire, rope, or chain supported on stanchions, *or a method which provides equivalent protection.*" (Emphasis added.) The regulation gives no examples of "equivalent protection."

¶11 We do not look beyond the plain meaning of a statute where it is unambiguous. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994). And where a regulation uses a nontechnical term, we look to the dictionary for guidance. *State v. Pacheco*, 125 Wn.2d 150, 154, 882 P.2d 183 (1994). "Equivalent" means "to have equal power" or to be "equal in force or amount" or to be "virtually identical . . . in effect or function." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 769 (2002).

¶12 A spray-painted line is not equal or identical to a warning line in power, force, effect, or function. An erected warning line automatically alerts a worker as he nears the edge by providing physical resistance when he comes in contact with it, whereas a spray-painted line offers no resistance and requires a worker to look for the line while performing his work in order to know when he nears the edge. Flags to increase visibility can mark an erected line but not a spray-painted line. A safety monitor can more easily assess a worker's proximity to an erected line than a spray-painted line from all vantage points on the roof. Building materials or debris can also obscure a spray-painted line, but not an erected line. Thus, under WAC 296-155-24520(1)(c)'s plain language, a spray-painted line does not provide "equivalent protection" to an erected warning line.

¶13 This interpretation also comports with a common-sense reading of the regulation as a whole. The phrase "or a method which provides equivalent protection" applies to terms preceding it in the same subsection, such that the protection must be equivalent to a "wire, rope, or chain supported on stanchions." WAC 296-155-24520(1)(c). Subsequent subsections of WAC 296-155-24520(1) set forth

the requirements that must be met by the wire, rope, chain, or equivalent method of protection. WAC 296-155-24520(1)(d)-(g). Because a spray-painted line cannot meet the requirements for height, strength, resistance, and flagging set forth at WAC 296-155-24520(1)(d)-(g), it is not an equivalent method.

¶14 We further accord L&I's interpretation deference because it is plausible, not contrary to legislative intent, and within the scope of its expertise in promoting workplace safety. *Wash. Cedar*, 137 Wn. App. at 598-99. Dan McMurdie, L&I's WISHA policy and technical services safety program manager, testified that examples of equivalent protection would be "warning ribbons or tapes" that are also highly visible and that meet the 200 pound breaking strength requirement. AR (McMurdie Tr. at 12). He testified that he would not consider a spray-painted line equivalent protection because it relies entirely on the worker to monitor himself in order to keep away from the edge. Finally, a strict reading of the exception is appropriate because WISHA is a remedial statute.[5] *See, e.g., Mead Sch. Dist. No. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 140, 145, 530 P.2d 302 (1975).

¶15 Based on a plain reading of the regulation and its purpose, and according weight to the agency's interpretation based on its expertise in workplace safety, a spray-painted line is not "equivalent protection" for purposes of WAC 296-155-24520(1)(c). J&S did not comply with the

---

[5] J&S's interpretation places the burden of fall protection implementation on the worker. This conflicts with WISHA's purpose of protecting employees from harm by employer regulatory violations and assuring safe and healthful working conditions. *Goucher v. J.R. Simplot Co.*, 104 Wn.2d 662, 672-73, 709 P.2d 774 (1985). J&S's claim that spray painting a line was the only feasible or safe alternative while performing leading edge work is not persuasive because there was testimony that workers could relocate an erected warning line as work progressed and that roof decking was typically performed by sliding pieces under a warning line. It would also be contrary to WISHA's remedial purpose for the legislature to enact a regulation explicitly requiring erection of a warning line during leading edge work, as it did with WAC 296-155-24520, if doing so made leading edge work more dangerous for workers. It is precisely because the work area involved a leading edge that specific fall protections were required.

regulation when it used a spray-painted line as a method of fall protection for leading edge work.

WAC 296-155-24515(2)(b)

¶16 Alternatively, J&S argues that it was permitted to use a safety monitor as the sole means of fall protection for Delaney's work area because WAC 296-155-24515(2)(b) provides that it may do so for work being performed on low-pitched roof perimeters less than 50 feet wide. We disagree that WAC 296-155-24515(2)(b) applies, but even assuming that it does, J&S's argument fails.[6]

¶17 Under WAC 296-155-24515(2)(b), a safety monitor system may be used without a warning line where workers are engaged in *"roofing* on low-pitched roofs less than 50 feet wide." (Emphasis added.) The definitions for "roof" and "roofing work" explicitly differentiate roofing from construction of a roof deck. WAC 296-155-24503. No one disputes that J&S was constructing the building's roof deck at the time of the site visit and had not begun actual roofing work, so WAC 296-155-24515(2)(b) does not apply.[7]

¶18 Because a spray-painted line does not constitute equivalent fall protection under WAC 296-155-24520(1)(c) and because WAC 296-155-24515(2)(b) does not apply to the work that J&S was performing at the time of the site visit,

---

[6] Delaney performed leading edge work. Fall protections required for leading edge work are set forth at WAC 296-155-24520.

[7] J&S also argues that because the width of the work area where Delaney was standing was less than 50 feet, WAC 296-155-24515(2)(b) applies. This argument lacks merit and conflicts with the regulation's plain meaning. WAC 296-155--24515(2)(b) applies to roofs less than 50 feet wide. Per WAC 296-155-24523(1) and example A, where a roof is a simple rectangle, width is measured as "the lesser of the two primary overall dimensions." There is no dispute here that the building was a 90-foot-wide rectangle. The regulation states that the purpose of its examples for irregularly-shaped roofs is to provide measurement guidance for roofs that are *"not simple rectangles,"* with the intent to *"minimize* the number of roof areas where safety monitoring systems alone are sufficient protection." WAC 296-155-24523(2) (emphasis added).

the trial court and BIIA did not err in affirming J&S's citation for inadequate fall protection.

¶19 Affirmed.

BRIDGEWATER and PENOYAR, JJ., concur.