[No. 41489-9-II.   Division Two.   February 22, 2012.]

POTELCO, INC., *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

648

*Robert M. Howie, Skylar A. Sherwood,* and *Gena M. Bomotti* (of *Riddell Williams PS*), for appellant.

*Robert M. McKenna, Attorney General,* and *Sarah L. Martin, Assistant,* for respondent.

¶1 PENOYAR, C.J. — The Department of Labor and Industries (Department) issued Potelco Inc. a citation for a serious violation of a Washington Industrial Safety and Health Act of 1973[1] (WISHA) regulation. Specifically, the citation alleged that Potelco failed to comply with WAC 296-45-52530(1)(b) by failing to post (1) the required number of warning signs at its work site and (2) a flagger sign on the west side of its work site. The Board of Industrial Insurance Appeals (Board) affirmed the Department's issuance of the citation and penalty assessment. Potelco appeals, arguing that the Board erred in concluding that Potelco did not post appropriate advance signage. Potelco also contends that the Board erred in affirming the Department's classification of the violation as "serious" and the citation's severity rating. We affirm.

## FACTS

¶2 In August 2007, George Maxwell, a department compliance safety and health officer, inspected a Potelco work site, where Potelco was performing utility pole work. The work site was located on Northeast Paulson Road, near and east of its intersection with Central Valley Road, in Silverdale, Washington. Northeast Paulson Road's posted speed limit is 35 miles per hour. There is a minimart on the northeast corner of the intersection with parking lot access from both Northeast Paulson Road and Central Valley Road.

¶3 One flagger directed traffic. He stood to the west of the work site, approximately 105 feet from the intersection. Maxwell observed three signs on the east side of the work site. He observed only one sign, a "Road Work Ahead" sign, approximately 60 feet from the intersection, on the west side of the work site. Certified Appeal Board Record (CABR) at 60.

---

[1] Ch. 49.17 RCW.

¶4 The Department cited Potelco, alleging that Potelco had committed a serious violation of WAC 296-45--52530(1)(b), which requires employers to comply with WAC 296-155-305 when they use flaggers, by failing to post the required number of warning signs on Central Valley Road north and south of the work site and by failing to post a flagger sign on the west side of the work site. The Department rated the violation a 6 on the severity scale and a 1 on the probability scale.[2] The Department also assessed a $1,000 penalty. The map below illustrates the work site:[3]

[2] "Severity rates are based on the most serious injury, illness, or disease that could be reasonably expected to occur because of a hazardous condition." WAC 296-900-14010. Severity rates range from 1 (lowest) to 6 (highest). WAC 296-900--14010. A severity rate of 6 is appropriate when the most serious injury from the violation is likely to be death. WAC 296-900-14010. The probability rate is "a number that describes the likelihood of an injury, illness, or disease occurring, ranging from 1 (lowest) to 6 (highest)." WAC 296-900-14010.

[3] The Department attached this map as appendix A to its brief. That brief was duly served on Potelco's counsel prior to oral argument and Potelco has not claimed any inaccuracies therein. Since it appears to be reasonably accurate and complete, we include it in this opinion for illustrative purposes.

¶5 On September 17, Potelco appealed the citation to the Department's Safety Division. The Department elected not to reassume jurisdiction and transmitted Potelco's appeal to the Board.

¶6 At the hearing, Maxwell testified that he did not believe Potelco could have had three signs on Northeast Paulson Road, to the west of the work site, "and made them effective." Certified Appeal Board Report of Proceedings (CABRP) at 41. Maxwell testified, however, that Potelco should have had two additional warning signs on each direction of Central Valley Road and that the one sign on the west side of the work site should have said "Flagger Ahead" or had a picture of a flagger. CABRP at 41. Northeast Paulson Road continued through the intersection; however, Maxwell characterized the portion of Northeast Paulson Road to the west of Central Valley Road as "just a driveway for the people that live up there" and, thus, he "did not feel they needed a sign there." CABRP at 34.

¶7 The Board issued a proposed decision and order. Potelco petitioned the Board for review; the Board granted review and entered a final decision and order affirming the Department's issuance of the citation and penalty. Potelco appealed the Board's decision and order to the Kitsap County Superior Court, and the superior court affirmed and awarded the Department $200 in attorney fees. Potelco appeals.

## ANALYSIS

¶8 Potelco asserts that the Board erred in concluding that it committed a serious violation of WAC 296-45--52530(1)(b) by failing to post appropriate advance warning signage as contemplated in WAC 296-155-305. Potelco also argues that the Board erred in affirming the Department's assessed penalty. We disagree.

I. STANDARD OF REVIEW

¶9 We review the Board's decision directly, based on the agency record. *J.E. Dunn Nw., Inc. v. Dep't of Labor*

*& Indus.*, 139 Wn. App. 35, 42, 156 P.3d 250 (2007). The Board's findings of fact are conclusive if substantial evidence supports them. *Elder Demolition, Inc. v. Dep't of Labor & Indus.*, 149 Wn. App. 799, 806, 207 P.3d 453 (2009). "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the finding's truth. *Elder Demolition*, 149 Wn. App. at 807. We then review the findings of fact to determine if they support the Board's conclusions of law. *Elder Demolition*, 149 Wn. App. at 807.

¶10 We review issues of statutory construction de novo. *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 912, 83 P.3d 1012 (2004). We interpret agency regulations as if they were statutes. *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn. App. 402, 409, 97 P.3d 17 (2004), *aff'd on other grounds*, 157 Wn.2d 90, 135 P.3d 913 (2006).

II. Three Sign Advance Warning Sequence

¶11 Potelco asserts that it complied with the plain language of WAC 296-155-305(8)(a) when it set up a three sign advance warning sequence on the east side of the work site. Potelco contends that the regulation did not require it to post advance sign warnings on Central Valley Road. We disagree.

¶12 We construe WISHA regulations liberally to achieve their purpose of providing safe working conditions. *J&S Servs., Inc. v. Dep't of Labor & Indus.*, 142 Wn. App. 502, 506, 174 P.3d 1190 (2007). Substantial weight is given to an agency's interpretation within its area of expertise, and we uphold that interpretation if it is a plausible construction of the regulation and not contrary to legislative intent. *J&S Servs.*, 142 Wn. App. at 506.

¶13 If a regulation's meaning is plain and unambiguous on its face, then we give effect to that plain meaning. *Overlake Hosp. Ass'n v. Dep't of Health*, 170 Wn.2d 43, 52, 239 P.3d 1095 (2010). An ambiguity exists, however, if there is "more than one reasonable interpreta-

tion" of the regulation. *Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs.*, 168 Wn.2d 421, 433, 228 P.3d 1260 (2010).

¶14 When an employer uses flaggers in a public work area, the employer must comply with WAC 296-155--305. WAC 296-45-52530(1)(b). On all flagging operations, employers must provide "[a] three sign advance warning sequence on all roadways with a speed limit below 45 mph." WAC 296-155-305(8)(a). On rural roads with speed limits of 35 miles per hour, the warning signs must be spaced 350 feet apart from each other. WAC 296-155-305(8)(c).

¶15 The regulation is ambiguous because it states that "spacing may be adjusted to accommodate interchange ramps, at-grade intersections, and driveways," but it does not indicate how intersections affect the placement of the warning sequence. WAC 296-155-305(8). Here, the flagger stood 105 feet from the intersection; thus, Potelco could not have placed three signs, with 350 feet between each sign, between the flagger and the intersection. Maxwell testified that, under the regulation, Potelco should have had two advance warning signs in both directions of Central Valley Road. Advance warning signs on Central Valley Road, two to the north of its intersection with Northeast Paulson Road and two to the south of the intersection, along with the one sign posted on Northeast Paulson Road, would have provided a three sign advance warning sequence to drivers approaching the work site from the roadways to the west.

¶16 The Department's construction of WAC 296-155--305(8)(a) requires employers to place a three sign advance warning sequence in a manner that alerts drivers approaching the work site from all directions of an upcoming flagging operation. This interpretation of the regulation is plausible and consistent with the legislative intent to provide safe working conditions. We conclude that Potelco did not comply with the regulation when it failed to post three warning signs on the west side of the work site.

## III. Flagger Symbol Sign

¶17 Next, Potelco argues that WAC 296-155-305(1)(a) did not require Potelco to post a flagger sign on the west side of its work site. We disagree.

¶18 Under WAC 296-155-305(1)(a), "[e]mployers must first apply the requirements in this section. Then you must set up and use temporary traffic controls according to the guidelines and recommendations in Part VI of the [Federal Highway Administration's *Manual on Uniform Traffic Control Devices* (MUTCD) (2009 ed.)]." MUTCD section 6F.31 reads, "The Flagger (W20-7) symbol sign . . . should be used in advance of any point where a flagger is stationed to control road users." (Italics omitted.)

¶19 Here, the regulation at issue is unambiguous: The use of the word "should" indicates that a flagger sign is recommended, but not required, by the MUTCD. *See Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613, 762 P.2d 1143 (1988) (" 'Should' may be interpreted as discretionary, indicating merely a recommendation or preference."). But WAC 296-155-305(1)(a) contains mandatory language, stating that "[employers] *must* set up and use temporary traffic controls according to the . . . recommendations in Part VI of the MUTCD." (Emphasis added.) Thus, the recommendations in part VI of the MUTCD are actually requirements under WAC 296-155-305(1)(a). Again, this interpretation of the regulation is plausible and consistent with the legislative intent to provide safe working conditions for Washington's workers. Accordingly, we hold that the Board properly concluded that Potelco violated WAC 296-45-52530(1)(b) by not posting a flagger sign on the west side of its work site as WAC 296-155-305(1)(a) requires.

## IV. Serious Violation

¶20 Next, Potelco asserts that the Board erred in affirming the Department's categorization of the violation as "serious." Potelco contends that substantial evidence does not support finding of fact 4. Finding of fact 4 reads:

[T]he flagger, and other workers working for Potelco, Inc., at the Central Valley/Paulson Road intersection job site near Silverdale, were exposed to oncoming traffic from N.W. Paulson Road traffic turning from either direction of Central Valley Road eastbound onto N.E. Paulson Road, and from traffic exiting eastbound onto N.E. Paulson from a "mini-mart" located on the northeast corner of the intersection. This violation . . . exposed the flagger and other workers to the risk of being struck by traffic and suffering death or serious injury.

CABR at 3.

¶21 Under RCW 49.17.180(6):

[A] serious violation shall be deemed to exist in a workplace if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

"[T]he statute's 'substantial probability' language refers to the likelihood that, should harm result from the violation, that harm could be death or serious physical harm." *Lee Cook Trucking & Logging v. Dep't of Labor & Indus.*, 109 Wn. App. 471, 482, 36 P.3d 558 (2001) (quoting RCW 49.17.180(6)).

¶22 Potelco argues that serious physical harm was unlikely to occur because of the weather conditions, road speed and use, and the posted signs; however, Potelco's arguments are not relevant as to whether the violation was "serious." The base penalty for a violation is calculated by assigning a weight to a violation, called "gravity"; "[g]ravity is calculated by multiplying a violation's severity rate by its probability rate." WAC 296-900-14010. Potelco's arguments are relevant with regard to the calculation of the probability rate, "a number that describes the likelihood of an injury, illness, or disease occurring, ranging from 1 (lowest) to 6 (highest)." WAC 296-900-14010. Indeed, here the Department rated the violation a 1 on the probability scale.

¶23 Potelco's arguments, however, do not demonstrate that the violation was not "serious." Maxwell testified that if the flagger had been struck by a vehicle because of Potelco's failure to post proper signage, there was a probability that the harm could have resulted in death or serious physical harm. Substantial evidence supports finding of fact 4. We conclude that the Board did not err in affirming the Department's classification of the violation as "serious."

## V. SEVERITY RATING

¶24 Finally, Potelco argues that substantial evidence does not support the portion of finding of fact 5 that states, "The risk of serious injury or death results in a severity of 6." CABR at 4. We disagree.

¶25 "Severity rates are based on the most serious injury, illness, or disease that could be reasonably expected to occur because of a hazardous condition." WAC 296-900-14010. Severity rates range from 1 (lowest) to 6 (highest). WAC 296-900-14010. A severity rate of 6 is appropriate when the most serious injury from the violation is likely to be death. WAC 296-900-14010. If the flagger had been struck by a vehicle, the most serious injury would likely have been death. Substantial evidence supports the Board's finding of a severity rate of 6.[4]

## VI. ATTORNEY FEES

¶26 Potelco asks us to reverse the trial court's award of $200 in statutory attorney fees to the Department if we reverse the Board's decision. Because we affirm the Board's

---

[4] Potelco also contends that substantial evidence does not support the Board's finding that "[n]o evidence was presented that the apprentice had been trained in the placement of such signage, or in flagging activities." CABR at 3. This finding is not relevant to the issues Potelco raises: whether Potelco complied with the regulations at issue or whether the Department correctly assigned a severity rating of 6 or properly categorized the violation as "serious." Accordingly, we need not address the finding.

decision, we also affirm the trial court's award of statutory attorney fees.

¶27 Affirmed.

Van Deren and Worswick, JJ., concur.

Reconsideration denied March 29, 2012.