FILED
COURT OF APPEALS
DIVISION II

2013 DEC 17 AM 8:50

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| APCOMPOWER INC., | No. 43104-1-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF LABOR AND INDUSTRIES, | |
| Appellant. | |

BJORGEN, J. — The Washington State Department of Labor and Industries (Department) cited APComPower Inc. (APC) for violations of the Washington Industrial Safety and Health Act (WISHA), chapter 49.17 RCW, related to asbestos removal while performing work at the Centralia steam plant. After an industrial appeals judge (IAJ) found that APC had committed the violations, and the Washington State Board of Industrial Insurance Appeals (Board) affirmed that decision by order, APC appealed the Board's order to the superior court. The superior court vacated the order after determining that APC's intent to avoid asbestos work and reliance on statements that no asbestos was present in the work area excused its lack of compliance. The

superior court also determined that the Department failed to show that APC knew of the presence of asbestos or that the work exposed APC's employees to asbestos.

The Department appeals the superior court's decision. Rejecting APC's arguments that its subjective intent governed the applicability of the regulations, that it could rely on the plant owner's statements about the absence of asbestos to discharge its duty to comply with the regulations, that it could not have known of the regulatory violations through the exercise of the reasonable diligence, and that the Department needed to show its employees were exposed to asbestos, we reverse the superior court and reinstate the Board's order affirming the citation.

FACTS

APC contracted to perform boiler maintenance work at TransAlta's steam plant in Centralia, Washington. In the course of performing these services, APC assigned employees to work on two boiler air preheaters, numbers 11 and 12, during a scheduled maintenance period in May 2009.

The preheaters are large mechanical units that pipe hot gas emerging from the boilers in close proximity to cold air entering the boilers. This allows for a heat exchange that warms the incoming air, reducing thermal shock and stress on the boilers. To achieve an efficient heat exchange, the preheaters are heavily insulated. To work on the underlying equipment, workers must first remove this insulation.

Because the plant was built in 1972, its construction involved the extensive use of asbestos products, especially in its insulation. APC's contract with TransAlta states that APC will not perform any asbestos abatement as part of the services it provides. APC is not a

certified asbestos contractor, and the employees assigned to the work on the preheaters were not certified asbestos workers.

In preparation for the work on preheaters 11 and 12, APC asked TransAlta whether the insulation it needed to remove contained asbestos. Keith Ortis, the on-site supervisor of TransAlta's asbestos consultant, informed Ralph Mitchell, APC's foreman for the boiler work, that the insulation in APC's work area did not contain asbestos. However, Ortis did mention that the plant used asbestos block material in the vicinity of preheaters 11 and 12. Ortis drew Mitchell a map laying out his recollection of the location of asbestos-containing insulation. Based on the map and Mitchell's discussion with Ortis, a job safety analysis prepared by APC and approved by TransAlta does not list asbestos as a safety concern.

On May 25, 2009, APC began removing insulation between preheaters 11 and 12. The work site was not demarcated and controlled as a regulated area, nor did it have a negative pressure enclosure or a decontamination area. APC's employees worked without high efficiency particulate air (HEPA) respirators,[1] and APC never performed initial or continuing monitoring of its workers' asbestos exposure.

After removing a thick layer of fiberglass wool insulation, APC employees encountered dry white block insulation in one-foot by one-foot by two-inch pieces. One employee estimated that he and his partner removed between 8 and 15 of the blocks from the preheaters before stopping work. After removing the block insulation, APC's employees broke up the blocks and

---

[1] One of the employees testified he may have had a HEPA respirator at one point in his testimony, although he later stated that even if the respirator had a HEPA filter, it had no positive air supply as required by WAC 296-62-07715(4)(a)(ii).

3

placed the pieces into 50- or 60-gallon clear plastic garbage bags. They later disposed of these bags in the plant's dumpsters.

After APC's employees had finished removing the insulation from the work area, Mitchell walked by. One of the employees picked up a small piece of the block insulation lying nearby and asked Mitchell if he should have any safety concerns. Mitchell told the employee to wait while he summoned Ortis to examine the material. When Ortis arrived, he informed Mitchell and the worker that the block contained asbestos.

APC's safety coordinator then directed the employees to proceed to the nearest bathroom, where they placed their clothing and boots in sealed contamination bags. The safety coordinator did not use a HEPA vacuum to decontaminate the men before asking them to leave the work area.

In order to test whether the insulation the APC employees handled actually contained asbestos, Ortis later retrieved a small sample of the white block material from one of the clear plastic bags placed in a dumpster. A laboratory tested this piece of material, as well as material sampled from the vicinity of preheaters 11 and 12. All of the materials contained asbestos.

The Department investigated the incident and cited APC for serious violations of Washington Administrative Code (WAC) regulations related to working with asbestos containing materials.[2] APC appealed the citation, and the parties contested the violations before

---

[2] Specifically, the citation alleged that APC performed an asbestos abatement project without obtaining the necessary certification in violation of WAC 296-65-030(1); failed to establish a regulated area, negative pressure enclosure, and decontamination area surrounding or adjacent to the work area in violation of WAC 296-62-07711(1), -07712(7)(a), and -07719(3)(b)(i); failed to employ certified asbestos workers to perform a class I abatement project in violation of WAC 296-62-07722(3)(a); failed to wet the asbestos before disturbing it in violation of WAC 296-62-07712(2)(c); failed to decontaminate workers with a HEPA vacuum before allowing them to

No. 43104-1-II

an IAJ.

The IAJ determined that in the performance of its contract APC had performed asbestos work under the governing regulatory scheme. The IAJ determined that APC's intent was irrelevant to the applicability of the regulations. The IAJ also concluded that APC could not rely on Ortis's statements regarding the presence of asbestos, or the "confusing" map that he drew, in order to excuse its lack of compliance with the asbestos related regulations.[3] Board of Industrial Insurance Appeals Record (BR) at 45. The IAJ rejected APC's argument that the Department could not show any worker exposure to asbestos after finding the Department adequately showed chain-of-custody. The IAJ reached this conclusion by noting that the bag containing the sample Ortis removed was distinctively clear, as opposed to the normal bags used to dispose of asbestos containing material, and also that the contents of the bag matched the materials APC's workers claimed to have disposed of. After rejecting APC's arguments, the IAJ upheld the citation in its entirety in the proposed decision and order.

APC appealed this proposed decision and order to the Board. The Board denied APC's petition for review and adopted the proposed decision and order as its own order.

---

leave the work area and remove their clothing in violation of WAC 296-62-07719(3)(b)(iii); failed to supply workers the proper positive air pressure HEPA respirators in violation of WAC 296-62-07715(4)(a)(ii); failed to employ an asbestos trained competent person on site in violation of WAC 296-62-07728(1); and failed to perform and initial exposure assessment or daily monitoring in violation of WAC 296-62-07709(3)(a)(ii) and (c)(i).

[3] The Board record is partially sequentially paginated, but this pagination does not include the hearing transcripts and exhibits. Consequently, we cite to testimony from the hearing by transcript date and page number and cite to exhibits solely by hearing exhibit number.

5

APC then appealed the Board's order to the superior court, which reversed the order and vacated the citation in its entirety. The superior court determined that the regulations the Department cited APC for violating only applied if APC intended to perform asbestos abatement work. The superior court determined that APC had no such intent and that it had taken steps to ensure it did not do any asbestos abatement work. The superior court also determined that the Department could not show the employees were exposed to asbestos because it could not show the samples tested for asbestos were from the insulation the employees had handled.

The Department appeals, asking us to reverse the superior court and reinstate the Board's order.

## ANALYSIS

The legislature enacted WISHA "'to assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of Washington.'" *Adkins v. Aluminum Co.*, 110 Wn.2d 128, 146, 750 P.2d 1257, 756 P.2d 142 (1988) (quoting RCW 49.17.010). Under WISHA, the Department both promulgates administrative rules to effectuate WISHA's aim of ensuring workplace safety and enforces these regulations through its power to impose civil penalties and to request the prosecuting attorney to commence criminal prosecutions. RCW 49.17.040, .180, .190.

RCW 49.17.180 divides civil violations of WISHA, or regulations the Department promulgates under WISHA's authority, into three categories: willful or repeat, serious, and not serious. RCW 49.17.180(1), (2), (3). A serious violation occurs

> in a workplace if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use

6

in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

RCW 49.17.180(6). To prove a serious regulatory violation under RCW 49.17.180(6), the Department must show that (1) the regulation applies, (2) a regulatory violation occurred, (3) employees were exposed to the regulatory violation, (4) the employer knew or could have known of the regulatory violation with reasonable diligence, and (5) there is a substantial probability the violation could result in death or serious physical harm *Wash. Cedar & Supply Co., Inc. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 914, 83 P.3d 1012 (2004) (quoting *D.A. Collins Constr. Co. v. Sec'y of Labor*, 117 F.3d 691, 694 (2d Cir. 1997).

A.    Standard of Review

We review a decision by the Board directly based on the record before it when it made the decision. *J.E. Dunn Nw., Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 35, 42, 156 P.3d 250 (2007). In that review, "[t]he findings of the board or the hearing examiner where the board has denied a petition or petitions for review with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." RCW 49.17.150(1). Substantial evidence is evidence "sufficient to persuade a fair-minded person of the truth of the matter asserted." *Katare v. Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012), *cert. denied*, 133 S. Ct. 889, 184 L. Ed. 2d 661 (2013). If we determine substantial evidence supports the findings of fact, we then look to whether the findings support the Board's conclusions of law. *J.E. Dunn*, 139 Wn. App. at 42.

We review de novo the interpretation of a statute or regulation. *Roller v. Dep't of Labor & Indus.*, 128 Wn. App. 922, 926, 117 P.3d 385 (2005) (quoting *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn. App. 402, 409, 97 P.3d 17 (2004)). We review the Board's

interpretation of a statute or regulation under an error of law standard. *Roller*, 128 Wn. App. at 926 (quoting *Cobra Roofing*, 122 Wn. App. at 409). Under this standard, we may substitute our interpretation for the Board's if we determine the Board erred. *Roller*, 128 Wn. App. at 926 (quoting *Cobra Roofing*, 122 Wn. App. at 409).

B.    <u>APC violated the cited regulations in chapters 296-62 and 296-65 WAC</u>

The Department cited APC for violating several WAC regulations governing asbestos work, and the Board affirmed the citation in its entirety. APC challenges (1) the Department's showing on the first element of a serious violation by claiming that the asbestos related regulations did not apply because APC did not intend to perform asbestos abatement work and relied on TransAlta's assurances of an asbestos-free work site; (2) the Department's showing on the fourth element of a serious violation by claiming APC had no knowledge of the presence of asbestos at the site; and (3) the Department's showing on the fifth element of a serious violation by claiming the Department could not show serious physical harm or death could result from the incident because the Department could not show the regulatory violation exposed the workers to asbestos. *See Wash. Cedar*, 119 Wn. App. at 914 (discussing the five elements of a serious violation). APC's arguments regarding the first element find no support in the text of the regulations at issue and controlling case law requires us to reject the arguments it makes with respect to the fourth and fifth elements.

1. APC's intent to avoid asbestos abatement work and its reliance on Ortis's statement that no asbestos was present in the work site did not render the requirements of WAC chapters 296-62 and 296-65 inapplicable to APC's work.

APC argues that its intention to avoid asbestos abatement work and the steps it took to ensure it performed no such work rendered the WAC provisions governing asbestos abatement work inapplicable. It cites to its contract with TransAlta, which states that it will not perform asbestos work, its supervisor's conversation with Ortis about the absence of asbestos at the work site, and the job safety analysis it did with TransAlta in support of these contentions. Although APC did make efforts to ensure that its work site contained no asbestos, and did rely on TransAlta's assurance of an asbestos free work site, it in fact performed class I asbestos work, and its discharge of its contractual duties constituted an asbestos abatement project. The regulations applied regardless of APC's intent or reliance on TransAlta's assurances.

i. APC's intent to avoid asbestos work does not make the regulations inapplicable

We interpret agency regulations in the same manner we interpret statutes. *Potelco, Inc. v. Dep't of Labor & Indus.*, 166 Wn. App. 647, 653, 272 P.3d 262 (2012). We attempt to give effect to the promulgating agency's intent by discerning the regulation's plain meaning. *See Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-12, 43 P.3d 4 (2002). We discern the regulation's plain meaning by examining its plain text as well as any related regulations. *See Campbell & Gwinn*, 146 Wn.2d at 10-12. If the regulation is ambiguous after this plain meaning analysis, we apply canons of construction in order to interpret the regulation. *See Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 600, 278 P.3d 157 (2012).

The plain text of the regulations at issue provides no support to APC's argument that the regulations did not apply to its actions. Each regulation, by its text, applies where the individual performs class I asbestos work or an asbestos abatement project, regardless of the employer's intent. Further, the Department has stated its intent to regulate all workplace exposure to asbestos. WAC 296-62-07701(1) ("WAC 296-62-07701 through 296-62-07753 applies to all occupational exposures to asbestos in all industries covered by chapter 49.17 and chapter 49.26 RCW."). Exposure is exposure, intentional or not. We must give effect to the plain meaning of the statute and the purpose of the regulatory structure expressed by the WACs. This requires us to reject APC's argument.

Even if we accepted APC's argument that the omission of any type of intent element from the regulations at issue left them ambiguous, and thus susceptible to construction, several canons of construction require us to reject the reading offered by APC.

First, WISHA is a remedial statute, and we construe both the statute itself and any regulations promulgated under its authority liberally. *Adkins*, 110 Wn.2d at 146 (quoting RCW 49.17.010). WISHA aims to secure a "safe and healthful" work environment for all Washington workers. RCW 49.17.010. Reading these regulations to apply regardless of employer intent furthers WISHA's goal by prompting employers to guard against mistakes in identifying asbestos containing material, as happened here.

Second, the Department has expertise with WISHA and the regulations at issue. We give "substantial weight" to the Department's interpretation of regulations with which it has expertise and will uphold that interpretation if "'it reflects a plausible construction of the language of the statute and is not contrary to the legislative intent.'" *Cobra Roofing*, 122 Wn. App. at 409

10

(quoting *Seatome Convalescent Ctr. v. Dep't of Soc. & Health Servs.*, 82 Wn. App. 495, 518, 919 P.2d 602 (1996)). The Department reads the omission of an intent element in these regulations to mean that there is no such element. This is a plausible interpretation of the regulations and does not run counter to the legislative intent behind WISHA. Our deference to the Department requires us to adopt its plausible interpretation of these regulations.

Third, APC asks us to determine that a serious violation must be willful. The legislature expressly made willful WISHA violations distinct from serious WISHA violations, providing greater penalties for willful violations. RCW 49.17.180(1), (2). We find no definition for "willful" in the statutes or regulations at issue and therefore give the term its ordinary dictionary meaning. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). "Willful" is defined as "2: done deliberately: not accidental or without purpose: INTENTIONAL." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2617 (1966). APC's argument, that its intent mattered as to whether it committed a serious violation, thus asks us to hold that the Department must prove a willful violation in order to prove a serious one. This argument asks us to conflate serious and willful violations and render portions of RCW 49.17.180(1) superfluous, which we decline to do. *Jongeward*, 174 Wn.2d at 601.

Finally, the legislature has specifically recognized the dangers posed by asbestos and required the Department to reduce that threat under WISHA. RCW 49.26.010, .140. APC's interpretation allows companies to easily evade regulations governing asbestos abatement projects by ignoring their possible existence. This is a strained and absurd reading of regulations promulgated to give effect to the legislature's concern about workplace asbestos exposure, and we avoid such readings. *See City of Seattle v. Fuller*, 177 Wn.2d 263, 270, 300 P.3d 340 (2013).

With our rejection of APC's intent argument, substantial evidence supports the Board's conclusion that the regulations applied. The WAC requires employers to assume that the type of material at issue here, thermal system insulation present in a building constructed before 1980, contains asbestos unless the employer rebuts this presumption. WAC 296-62-07703 (definition of presumed asbestos containing material and asbestos).[4] Removal of thermal system insulation is considered class I asbestos work, and its removal is, by definition, an asbestos project. WAC 296-62-07703 (definition of class I asbestos work); WAC 296-62-07722(3)(a) ("Class I [asbestos] work must be considered an asbestos project."). An asbestos project involving three or more square or linear feet of material is an asbestos abatement project, and undisputed testimony indicated that APC's employees removed three or more square feet of thermal system insulation. WAC 296-62-07703 (definition of an asbestos abatement project). The regulations at issue applied to APC's actions.

ii. Any reliance on Ortis's statement that the work area had no asbestos does not render the regulations inapplicable.

As APC notes, WAC 296-62-07721(1)(c)(ii) required TransAlta to perform a good faith inspection of the work site to determine the presence of asbestos before soliciting subcontracting bids. TransAlta could avoid this good faith inspection if its agent, Ortis, was "reasonably certain that asbestos will not be disturbed by the project" or "assume[d] that the suspect material contain[ed] asbestos and handl[ed] the material in accordance" with chapter 296-62 WAC. WAC 296-62-07721(1)(c)(ii)(B). TransAlta was also required by WAC 296-62-07721 to give

---

[4] Ignoring this presumption could itself be considered "willful" but the Department has not made this argument.

contractors a written statement either of the reasonable certainty of nondisturbance of asbestos or of assumption of the presence of asbestos if a good faith inspection was not carried out.

APC had a duty to treat the thermal system insulation it contracted to remove as asbestos containing material unless it rebutted the presumption that the insulation contained asbestos. WAC 296-62-07703 (definition of "[p]resumed asbestos-containing material"), -07721(1)(b). This duty existed apart from TransAlta's duty to perform a good faith analysis. *See* RCW 49.17.180(6) (employers must exercise reasonable diligence to learn of regulatory violations); WAC 296-62-07721(1)(b).

WAC 296-62-07721(3) provides two methods for rebutting the presumption that the insulation contained asbestos; both require analytical testing. *See* WAC 296-62-07721(3)(b)(i), (ii). By enumerating only these two methods, the legislature excluded the good faith inspection by the owner under WAC 296-62-07721(1)(c)(ii) and the owner's statement that asbestos will not be disturbed under WAC 296-62-07721(1)(c)(ii)(B) as a means of rebutting the presumption that thermal system insulation in a building constructed before 1980 contains asbestos. *See State v. Ortega*, 177 Wn.2d 116, 124, 297 P.3d 57 (2013) ("'to express or include one thing implies the exclusion of the other.'") (quoting BLACK'S LAW DICTIONARY 661 (9th ed. 2009)). Ortis's statement thus could not relieve APC of its duty to either assume the insulation contained asbestos or demonstrate that it did not. Since APC did not rebut the presumption under WAC 296-62-07721(3)(b)(i) or (ii), it had a duty to treat the insulation as asbestos containing material and comply with the regulations governing class I asbestos work and asbestos abatement projects. APC failed to do so.

2. APC had actual or constructive knowledge that its workers performed work on an asbestos abatement project without complying with the regulations found in chapters 296-62 and 296-65 WAC.

Next, APC urges us to hold that it had no knowledge that its workers did or would encounter asbestos during the work on preheaters 11 and 12. The Department accepts this framing of the issue and claims that APC knew or could have known through reasonable diligence that the workers would encounter asbestos.

To establish a serious violation, RCW 49.17.180(6) requires the Department to show that the employer knew, or could have known through the exercise of reasonable diligence, of a regulatory violation. *See, e.g., Erection Co., Inc. v. Dep't of Labor & Indus.*, 160 Wn. App. 194, 203, 248 P.3d 1085, *review denied,* 171 Wn.2d 1033, 251 P.3d 664 (2011); *Wash. Cedar*, 119 Wn. App. at 914, 916. The Board made no explicit findings regarding APC's knowledge of a violation or its ability to know of a violation with reasonable diligence. APC contends that the failure to make these findings requires reversal, citing state and federal cases concerning a lack of administrative fact finding.

Under RCW 34.05.562(2)(a) the appropriate response to the absence of findings is not dismissal, but remand for the Board to make the necessary factual determinations. However, where the evidence is uncontroverted, we are in as good a position to find facts as the lower tribunal and any remand for the entry of findings of fact would be a useless act. *Cogswell v. Cogswell*, 50 Wn.2d 597, 601-02, 313 P.2d 364 (1957). APC's appeal presents a case where a remand would be a useless act.

"The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation." *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563, 91 S. Ct. 1697, 29 L. Ed. 2d 178 (1971). We may apply this principle, especially when the law imposes a duty of investigation. *Cf. Samuelson v. Cmty. Coll. Dist. No. 2*, 75 Wn. App. 340, 347-48, 877 P.2d 734 (1994). RCW 49.17.180(6), by requiring that employers exercise reasonable diligence to learn of regulatory violations, imposes a duty of investigation.

Because we charge APC with knowledge of the WAC, we presume it knew that the preheater project was class I asbestos work and an asbestos abatement project, given the volume of presumed asbestos containing insulation involved. We also presume that APC understood it needed to comply with the WAC provisions governing this work unless it rebutted the presumption that the insulation contained asbestos. Given this knowledge, and APC's duty to exercise reasonable diligence to know of regulatory violations under RCW 49.17.180(6), we find that APC could have known of these violations with reasonable diligence. APC simply would have needed to see its employees performing the work to know they were not using respirators, negative pressure enclosures, regulated areas, HEPA vacuum decontamination procedures, or exposure monitoring as required by chapters 296-62 and 296-65 WAC. *See Erection Co.*, 160 Wn. App. at 206-07 (employer could know of readily apparent violations in work area with reasonable diligence). A simple check of APC's files would show that APC was not a certified asbestos contractor, that its employees were not certified asbestos workers, and that APC did not employ a competent person within the meaning of WAC 296-62-07703 for the preheater work. Given this finding, we affirm the Board's conclusion that APC committed serious violations

because we find that APC could have, with reasonable diligence, known of the regulatory violations.

    3. APC's violations could have resulted in death or serious injury.

Finally, APC challenges the showing the Department made with respect to whether its violation could have resulted in death or serious physical injury, the fifth element the Department must prove to demonstrate a serious violation. APC contends that the Department failed to show its employees had any exposure to asbestos because, it claims, the Department cannot trace the samples it took, and which tested positive for asbestos, to the insulation APC's employees removed from the preheaters. APC also maintains that, even assuming the employees had contact with asbestos, their limited exposure carried no risk of death or substantial harm.

We have adopted the majority federal interpretation of the language in RCW 49.17.180(6) requiring a "substantial probability that death or serious physical harm could result". *Lee Cook Trucking & Logging v. Dep't of Labor & Indus.*, 109 Wn. App. 471, 478-82, 36 P.3d 558 (2001). Under *Lee Cook*, if the Department shows that death or serious physical injury *could* result from a regulatory violation, the Department has made the necessary showing for the fifth element of its case. *Lee Cook*, 109 Wn. App. at 482. Thus, "[i]f the harm that the regulation was intended to prevent is death or serious physical injury, then its violation is serious per se." *Lee Cook*, 109 Wn. App. at 479 (quoting *California Stevedore & Ballast Co. v. Occupational Safety & Health Review Comm'n*, 517 F.2d 986, 988 n.1 (9th Cir. 1975)) (emphasis omitted) (internal quotations omitted). We apply this standard because

> [w]here violation of a regulation renders an accident resulting in death or serious injury possible, however, even if not probable, [the legislature] could not have intended to encourage employers to guess at the probability of an accident in

deciding whether to obey the regulation. When human life or limb is at stake, any violation of a regulation is serious.

*Lee Cook*, 109 Wn. App. at 478-79 (quoting *California Stevedore & Ballast*, 517 F.2d at 988) (emphasis omitted).

As the Department points out, under *Lee Cook*, it did not need to show APC's workers in fact had exposure to asbestos to show a serious violation. Undisputed testimony before the Board indicated that asbestos exposure can result in "lung disease, asbestosis, inflammation of the pleura, mesothelioma, [and] cancers of the lung" and that these conditions "ultimately can result in death." BR (May 17, 2010 Transcript) at 102, 114. APC allowed its workers to perform an asbestos abatement project without complying with the regulations promulgated to protect its workers from these dangers. The Board's findings support its conclusion that APC committed serious violations. *Accord Sec'y of Labor v. Trinity Indus., Inc.*, 504 F.3d 397, 401 (3d Cir. 2007) ("Given that the violations made it possible that the workers could unwittingly stumble into large amounts of asbestos without adequate protection, there was no need to show [the contractor's] employees suffered any actual exposure to asbestos, much less . . . 'significant exposure'" in order to show a serious violation).[5] We affirm the Board's decision based on our holding in *Lee Cook*.

APC argues also that "isolated" exposure does not lead to a "substantial probability of death or serious physical harm." Br. of Resp't at 47. In support, APC cites decisions under WISHA and the Occupational Safety and Health Act (OSHA) that hold that isolated exposure to asbestos cannot constitute a serious violation. Each of these cases predates *Lee Cook*, which

---

[5] Because WISHA parallels the Occupational Safety and Health Act (OSHA), we may look to federal cases interpreting OSHA as persuasive authority. *Lee Cook*, 109 Wn. App. at 478.

overruled their reasoning. APC cannot rely on them to contest the fifth element of the Department's case. So long as exposure to asbestos *could* lead to serious physical injury or death, and unchallenged testimony indicates that it could, a serious violation occurred.[6]

## CONCLUSION

We reverse the superior court's decision and reinstate the Board's order affirming APC's citation for violations of regulations governing asbestos related work.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

PENOYAR, J.

JOHANSON, A.C.J.

---

[6] Scientific research has, as yet, failed to discover any safe exposure level for asbestos. *Hernandez v. Amcord, Inc.*, 156 Cal. Rptr.3d 90, 94 (Cal Ct. App. 2013).